**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rene N. LAVOIE, Defendant–Appellant.**

No. 93–4215.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 27, 1994.

Decided March 28, 1994.

Robert A. Behlen, Jr. (argued and briefed), Asst. U.S. Atty., Cincinnati, OH, for plaintiff-appellee.

Edward Zumbiel (argued and briefed), Cincinnati, OH, for defendant-appellant.

Before: MARTIN and BATCHELDER, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

BOYCE F. MARTIN, JR., Circuit Judge.

Rene N. Lavoie challenges the sentence imposed by the district court after he pled guilty to making a false statement to a federally-insured bank. For the following reasons, we vacate Lavoie's sentence.

In the fall of 1992, Lavoie was interested in leasing or purchasing an automobile. On October 7, after some preliminary talks, he purchased a 1989 Jaguar XJSC convertible from Bob Williams Ford, which is located in the Cincinnati, Ohio area. To facilitate this transaction, Lavoie traded in a 1991 Buick LeSabre and applied for a $29,614.10 automobile loan, secured by the Jaguar, from Star Bank of Cincinnati. In completing a credit application for the loan, Lavoie stated

necessarily follow, the Sentencing Commission's recommendations regarding post-revocation sentencing.

*Id.* at 301 n. 11.

that he was employed as a field engineer by General Electric in Canada. On October 13, Bob Williams Ford received a facsimile document that purported to certify that Lavoie was an employee of General Electric of Canada. On January 7, 1993, after Lavoie failed to make payments on his loan, Star Bank repossessed the Jaguar and sold it at auction. As a result of making the loan to Lavoie and the forced sale, the bank lost $6,000.

After receiving a complaint concerning Lavoie from a fraud investigator at Star Bank, the Federal Bureau of Investigation conducted its own investigation. The FBI inquiry revealed that Lavoie was not, nor had he ever been, employed by General Electric, and that he was in fact unemployed at the time he applied for the automobile loan. Denise Ferguson, Lavoie's cousin, had forwarded the facsimile transmission concerning his employment to the car dealership from Montreal, Canada, pursuant to a prior arrangement between these two individuals. At the time of Lavoie's loan application, Star Bank's deposits were insured by the Federal Deposit Insurance Corporation.

On July 9, Lavoie pled guilty to a one-count information charging him with making a false statement to a federally-insured bank, in violation of 18 U.S.C. § 1014. In accordance with the Presentence Investigation Report, the district court determined that Lavoie's base offense level under the Sentencing Guidelines was six. U.S.S.G. § 2F1.1(a). The court then: (1) added four levels pursuant to Section 2F1.1(b)(1)(E), because the amount loaned and thus the loss to Star Bank, according to the court, was between $20,000 and $40,000; (2) added two additional levels pursuant to Section 2F1.1(b)(2)(A), because the offense involved more than minimal planning; and (3) subtracted two levels pursuant to Section 3E1.1(a), because Lavoie accepted responsibility for the offense. This calculation resulted in an adjusted offense level of ten. Because making a false statement to a federally-insured bank is a Class B felony, probation was not authorized. 18 U.S.C. § 3561(a)(1). Accordingly, given his criminal history category of I, Lavoie faced a sentencing range of six to twelve months of imprisonment.

On October 27, the district court sentenced Lavoie to a one-month term of imprisonment, five months of community confinement in a halfway house, and three years of supervised release. This timely appeal followed.

Lavoie argues that the district court erred in finding that Star Bank suffered a loss between $20,000 and $40,000, and thus that the court further erred in adding four levels to Lavoie's base offense level as a result of the magnitude of the victim's loss associated with the offense. Lavoie notes that because the bank repossessed and sold the Jaguar, the bank lost only $6,000 as a result of his false application and the $29,614.10 loan he received. As the bank's actual loss was between $5,000 and $10,000, Lavoie contends that the district court should have increased his offense level by only two levels. U.S.S.G. § 2F1.1(b)(1)(C). According to Lavoie, his adjusted offense level therefore should have been eight, and he should have faced a sentencing range of zero to six months imprisonment.

■ We address first this Court's jurisdiction over Lavoie's appeal. The government contends that because the sentence imposed by the district court is within the range proposed by Lavoie, this Court lacks jurisdiction over Lavoie's claim under 18 U.S.C. § 3742(a). We are not persuaded. It is well-settled that a defendant may only appeal (1) a sentence imposed in violation of law, (2) a sentence imposed as a result of an incorrect application of the guidelines, (3) an upward departure from the applicable guideline range, or (4) a plainly unreasonable sentence imposed for an offense for which there is no sentencing guideline. 18 U.S.C. § 3742(a). In construing this section, this Court has found that "a district court's refusal to depart downward from a sentence within the properly computed guideline range is not appealable." *United States v. Pickett*, 941 F.2d 411, 417–18 (6th Cir.1991). This Court does have jurisdiction, however, over a defendant's appeal of a sentence within the guideline range if the defendant identifies "a specific legal error in the formulation of [the] sentence." *United States v. Lovins*, 993 F.2d 1244, 1245–46 (6th Cir.1993) (citing *United*

*States v. Fuente–Kolbenschlag*, 878 F.2d 1377 (11th Cir.1989)).

In *Fuente–Kolbenschlag*, a panel of the Eleventh Circuit noted that the twenty-one-month term of imprisonment imposed by the district court in that case was also within the sentencing range advocated by the defendant. *Fuente–Kolbenschlag*, 878 F.2d at 1379. In considering whether it had jurisdiction over the appellant's challenge to his sentence, the panel initially noted that the legislative history of 18 U.S.C. § 3742(a) suggests that appellate review of sentences is intended to further the Sentencing Reform Act of 1984's primary goal of insuring correct application of the guidelines. The panel went on to state:

> Nothing in the language of section 3742 or its legislative history suggests that the defendant's right to appeal is limited to those cases in which there is a complete divergence between the guideline ranges advocated by the Government and by the defendant, and we decline to read such a limitation into the statute. We conclude, therefore, that a sentence is appealable if the appealing party alleges that the sentencing guidelines have been incorrectly applied, even in cases where the guideline ranges advocated by each of the parties overlap.

*Id.* Making explicit our adoption in *Lovins* of the reasoning in *Fuente–Kolbenschlag*, we now find that this Court has jurisdiction over a defendant's appeal when that defendant identifies a specific legal error in the formulation of his or her sentence, and alleges that the sentencing guidelines have been incorrectly applied, even though the sentence imposed is within the guideline range proposed by the defendant.

This conclusion is consistent with this Court's earlier determination that while a district court's decision not to depart downward from the appropriate guideline range is not appealable, a defendant may indeed appeal a district court's erroneous conclusion that it lacks discretion as a matter of law to depart downward. *United States v. Dellinger*, 986 F.2d 1042, 1044 (6th Cir.1993). The principle underlying *Dellinger* and *Fuente–Kolbenschlag* is identical: a district court's

sentencing determination is impacted by its understanding of the appropriate guideline range. In the present case, for example, the sentence imposed would have differed significantly if the district court had deemed appropriate a sentence at the midpoint of the applicable range and had applied the government's proposed sentencing range of six to twelve months, as opposed to sentencing the defendant at the midpoint of his proposed sentencing range of zero to six months. If the range the court used resulted from an incorrect application of the guidelines, an after-the-fact determination that the sentence actually imposed happened to be within the proper range does not cure the court's error. The actual sentence imposed in such a case is not material because it is the district court's application of the guidelines to arrive at the sentencing range that is at issue, not that court's discretionary choice of sentence within that range. Section 3742(a) specifically makes an incorrect application of the guidelines appealable, and thus we have jurisdiction over Lavoie's appeal.

■ We turn next to Lavoie's claim that the district court, in computing the loss suffered by Star Bank, failed to consider the bank's sale of the Jaguar, which was pledged as security by Lavoie. In light of this sale, Lavoie contends, the bank's actual loss was only $6,000, and not, as the district court found, between $20,000 and $40,000. We agree. The applicable guideline provision for offenses such as Lavoie's involving fraud and deceit is Section 2F1.1 and the accompanying commentary. Commentary adjoining a guideline provision, as the Supreme Court has recently noted, is generally binding on the district court. *See Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598, 603 (1993) (holding that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline").

Section 2F1.1 assigns a base offense level of six, and then provides for a scaled increase in the offense level corresponding to the loss suffered by the victim of the offense. *See*

U.S.S.G. § 2F1.1(b)(1)(A)–(S) (providing for an increase of one level for a loss of more than $2,000 and up to an increase of eighteen levels for a loss of more than $80,000,000). Application Note 7 to Section 2F1.1 instructs that normally, "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." This general rule, however, is subject to modification in certain exceptional instances "where additional factors are to be considered in determining the loss or intended loss." U.S.S.G. 2F1.1, comment. (n. 7). Fraudulent loan application cases are an example of such an exceptional instance. In contrast to other offenses involving fraud and deceit, in which the victim's loss is deemed to be the greater of the loss intended by the defendant or the actual loss, in cases in which "a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, *reduced by the amount the lending institution has recovered, or can expect to recover, from any assets pledged to secure the loan.*" U.S.S.G. § 2F1.1, comment. (n. 7(b)) (emphasis added).

This Court has explicitly recognized that "the loss calculation of U.S.S.G. § 2F1.1(b) in cases of fraudulently induced bank loans should be based on the 'actual' or 'expected' loss rather than on the face value of the total amount of the loan proceeds." *United States v. Chichy,* 1 F.3d 1501, 1508 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 620, 126 L.Ed.2d 584 (1993). While not precisely a "misrepresentation of his assets," Lavoie's false claim of employment similarly misled the lender as to his ability to repay the automobile loan. Pursuant to *Chichy,* the correct measure of loss in this case is thus $6,000: the full amount of the loan Lavoie received (the amount not repaid at the time the offense was discovered), reduced by the amount Star Bank recovered by selling the repossessed Jaguar (the asset pledged to secure the loan). The district court erred in finding that Star Bank lost between $20,000 and $40,000 as a result of Lavoie's fraudulent loan application, and further erred in increasing Lavoie's offense level by four levels. Because the bank's loss for the purposes of Section 2F1.1(b) was $6,000, Lavoie's base offense level should be increased by only two levels to account for the victim's loss.

For the foregoing reasons, we vacate the sentence imposed by the district court and remand the case for resentencing.