

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-8-1994

# United States of America v. Mummert

Precedential or Non-Precedential:

Docket 94-7119

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States of America v. Mummert" (1994). *1994 Decisions.* Paper 127.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/127

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
——————————

No. 94-7119
——————————

UNITED STATES OF AMERICA,
Appellee


v.


H. JAY MUMMERT,
Appellant

——————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 93-00189)
——————————————

Argued:  July 26, 1994
Before:  BECKER and ALITO, Circuit Judges and
BRODY, District Judge*

(Opinion Filed: September 8, 1994)

——————————————

JOSHUA D. LOCK, ESQ. (Argued)
106 Walnut Street
Harrisburg, PA  17101

Attorney for Appellant

DAVID M. BARASCH
United States Attorney

MARTIN C. CARLSON (Argued)
Assistant United States Attorney

——————————————————

* The Honorable Anita B. Brody, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Federal Building
228 Walnut Street
Harrisburg, PA  17108

<u>Attorneys for Appellee</u>

---

OPINION OF THE COURT

---

ALITO, <u>Circuit Judge</u>:

H. Jay Mummert, who pled guilty to a fraud offense, took this appeal to challenge the district court's calculation of his sentence under the Sentencing Guidelines and the district court's denial of his request for a downward departure.  We hold that the district court did not err in calculating Mummert's sentence under the Guidelines, but we remand for further proceedings concerning Mummert's downward departure request.

I.

Mummert, the former chief executive officer of the People's State Bank of East Berlin, Pennsylvania, became acquainted with a contractor, Richard Myford, and a realtor, Sherry Seidenstricker, who had formed a partnership to build and market residential properties.  In the fall of 1992, Mummert caused the bank to make a $95,000 loan to finance construction of a house for the partnership.  According to Mummert's presentence investigation report, Mummert "handled [this loan] in an irregular fashion.  Indeed, the bank's records ha[d] no complete loan application file documenting this . . . loan."

After the loan was made, Mummert states, he learned that independent auditors were conducting an examination of the bank's records, and he advised Myford and Seidenstricker of his concern that the examiners might discover the irregular loan. Myford and Seidenstricker, who were attempting to sell the property, then helped to prepare loan applications on behalf of the buyers, Paul and Melissa Belzner. Myford and Seidenstricker intended for the bank to make a new $95,000 bridge loan to the Belzners and for this money to be used to pay off the original loan.

The new loan application contained false financial information. It also falsely stated that the Belzners had active accounts at the People's State Bank and that they had been approved for a mortgage by another lender. The application was accompanied by a forged mortgage commitment letter, and the Belzners' signatures were forged.

According to his presentence investigation report, Mummert inserted some of the false information on the loan application, and he was present when the Belzners' signatures were forged. Over a period of time, Mummert then issued $95,000 in cashier's checks to Myford, who forged the Belzners' endorsements and used the checks to pay off the initial construction loan. After the Belzners subsequently informed the bank that they had not signed the loan application, the fraud was discovered.

In August 1993, Mummert was charged in a one-count information with causing false statements to be made in the

records of a federally insured credit institution, in violation of 18 U.S.C. § 1006.  This information alleged that Mummert had submitted the false and forged bank loan applications.

In September 1993, Mummert pled guilty to this offense, and a presentence investigation report was prepared.  The report determined that the amount of loss was $95,000 and that Mummert's offense level should therefore be increased by six levels under U.S.S.G. § 2F1.1(b)(1)(G).  The report also concluded that a two-level increase for more than minimal planning should be made under U.S.S.G. § 2F1.1(b)(2)(A).  In addition, the report concluded that there were no factors that warranted a sentencing departure.

Mummert's attorney disputed all of these determinations.  With respect to the amount of loss, he argued:

> All proceeds of the $95,000.00 loan which constitutes the basis of this prosecution went to the construction of a home.  That home is presently for sale.  The owner of that property has advised the bank that they will be repaid completely immediately upon the sale of the property. . . . Furthermore, the bank has long had civil redress available to it to secure the return of its money if they thought that they could do so more promptly that awaiting the sale of the home.  The bank did not avail themselves of this relief, however, because there has never been any question regarding the value of the home, the willingness to sell it, the intention to pay the bank fully upon its sale and, thus, the inevitability of the return of the full $95,000.00 plus interest.

Mummert's attorney also argued that his client's part in the completion of a forged loan application did not show more than minimal planning, and he contended that a downward departure was warranted on several grounds.  First, he argued that such a departure was justified under U.S.S.G. § 5K2.13 based on diminished capacity.  Second, he argued that a departure was justified under 18 U.S.C. § 3553(b), based on a combination of mitigating circumstances, including Mummert's benign motive, his lack of profit from the crime, his history of childhood abuse, and the length of time during which he did not commit any crimes.  See app. 77-78.

The district court adopted "the factual finding and guideline application in the presentence report" without comment.  Id. at 95.  With respect to the defendant's requests for a downward departure, the court said the following:

> This is a very hard problematic case.  I will not accept the diminished capacity as reason to depart.  If anything, I have given some real consideration to a departure based on aberration of this man's character in performing this.  But the cases I have been able to find on aberrant behavior usually are combined with an immediate acceptance of responsibility and restitution where applicable.  So I don't think there can be a departure for that reason.

Id. at 86.  This appeal followed.

## II.

On appeal, Mummert contends that the district court erred in finding that the amount of loss under U.S.S.G. § 2F1.1

was $95,000.  Instead, Mummert argues, the bank suffered no loss because, after the disclosure of the false statements and forged signatures on the loan application, Seidenstricker wrote a letter to the bank stating:

> The [property in question] is currently under contract with a new buyer.  Application for a mortgage is presently being made.
>
> Upon receiving a commitment from the mortgage lender a settlement date will be set and the proceeds shall be paid to The Peoples State Bank.
>
> If for some unforeseen reason the home is not sold I will gladly sign the above mentioned property over to The Peoples State Bank to ensure that your loan is covered.

Relying on United States v. Kopp, 951 F.2d 521 (3d Cir. 1991), Mummert argues that the bank's loss should have been calculated to be zero since it could have obtained the property pursuant to Seidenstricker's offer.  We disagree.

In Kopp, the defendant had been convicted for fraudulently obtaining a $13.75 million bank loan.  This loan was secured by a mortgage.  "[T]he bank demanded and received a deed in lieu of foreclosure and eventually sold the property for $14.5 million, $750,000 more than the face value of the loan."  Kopp, 951 F.2d at 524.  "The bank nonetheless calculated that it actually lost approximately $3.4 million overall, due to lost interest . . . , the bank's operating expenses when taking over the property . . . , and the cost of a low-interest loan to the new purchaser."  Id.  The sentencing judge held that the full

face value of the loan -- $13.75 million -- constituted the loss

for guidelines purposes, but our court reversed, stating:

> We . . . hold that fraud "loss" is, in
> the first instance, the amount of money
> the victim has actually lost (estimated
> at the time of sentencing) not the
> potential loss as measured at the time
> of the crime.  However, the "loss"
> should be revised upward to the loss
> that the defendant intended to inflict,
> if that amount is higher than actual
> loss.

Id. at 536; cf. United States v. Daddona, No. 93-7338 (3d Cir.

Aug. ___, 1994) slip op. at ____ (amount of loss under § 2F1.1 is

amount taken from bank in fraud scheme, not consequential damages

incurred by bank in completing project); United States v.

Badaracco, 954 F.2d 928, 937-38 (3d Cir. 1992) (in three-party

fraud case, amount of loss under § 2F1.1 is "gross gain" to

defendant in amount of face value of fraudulent loans).  Our

court also noted that Application Note 7, which had been

promulgated after Kopp's sentencing, "confirm[ed]" and

"buttress[ed]" our interpretation of U.S.S.G. § 2F1.1.  Kopp, 951

F.2d at 527 n.9, 534.

This new Application Note was in effect at the time of

Mummert's sentencing, and therefore we apply it directly here.

This Application Note states in pertinent part:

> In fraudulent loan application cases . . .
> the loss is the actual loss to the victim (or
> if the loss has not yet come about, the
> expected loss).  For example, if a defendant
> fraudulently obtains a loan by
> misrepresenting the value of his assets, the
> loss is the amount of the loan not repaid at
> the time the offense is discovered, reduced
> by the amount the lending institution has

> recovered (or can expect to recover) from any
> assets pledged to secure the loan.  However,
> where the intended loss is greater than the
> actual loss, the intended loss is to be used.

U.S.S.G. § 2F1.1, Application Note 7(b).

Applying this interpretation here, the loss is the actual loss to the bank at the time of sentencing ($95,000) "reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan" ($0).  The fact that Seidenstricker offered, after Mummert's crime was detected, to make a gratuitous transfer of the property in question does not alter this calculation.  A defendant in a fraud case should not be able to reduce the amount of loss for sentencing purposes by offering to make restitution after being caught.  See United States v. Shaffer, Nos. 93-7508/7549 (3d Cir. Aug. ___, 1994); United States v. Frydenlund, 990 F.2d 822, 826 (5th Cir.), cert. denied, 114 S. Ct. 337 (1993); United States v. Rothberg, 954 F.2d 217, 219 (4th Cir. 1992); United States v. Carey, 895 F.2d 318, 323 (7th Cir. 1990). The same rule applies when the offer of restitution is made by a third party who was involved in the offense in the way that Seidenstricker was here.  Consequently, we hold that the district court did not err in determining that the amount of loss for sentencing purposes in this case was $95,000.

Mummert also maintains that the district court erred in finding that he had engaged in "more than minimal planning" within the meaning of U.S.S.G. § 2F1.1(b)(2)(A) and that he had not clearly demonstrated "acceptance of responsibility for his

offense" within the meaning of U.S.S.G. § 3E1.1(a).  These findings are reviewed for clear error.  See United States v. Singh, 923 F.2d 1039, 1043 (3d Cir.) (acceptance of responsibility), cert. denied, 500 U.S. 937 (1991); United States v. Cianscewski, 894 F.2d 74, 82 (3d Cir. 1990) (more than minimal planning).  We find no clear error in this case.

III.

Mummert also argues that the district court erred in denying his request for a downward departure.  Under United States v. Denardi, 892 F.2d 269, 271-72 (3d Cir. 1989), our jurisdiction to entertain this argument depends on the basis for the district court's ruling.  If the ruling was based on the district court's belief that a departure was legally impermissible, we have jurisdiction to determine whether the district court's understanding of the law was correct.  By contrast, if the district court's ruling was based on an exercise of discretion, we lack jurisdiction.  Id.; see also, e.g., United States v. Love, 985 F.2d 732, 734 n.3 (3d Cir. 1993); United States v. Bierley, 922 F.2d 1061, 1066 (3d Cir. 1990).

Here, unfortunately, the district court did not state expressly whether its denial of the defendant's departure request was based on legal or discretionary grounds.  Since U.S.S.G. § 5K2.13 makes clear,[1] and the government apparently acknowledged

---

[1].  U.S.S.G. § 5K2.13 states:

> If the defendant committed a non-violent
> offense while suffering from significantly

at the time of sentencing, that a downward departure for
"diminished capacity" is permissible under some circumstances, it
seems quite likely that the district court's refusal to depart on
this ground was discretionary.  The basis for the district
court's rejection of the defendants remaining departure
arguments, however, is impossible to discern from the record, and
therefore we are unable to determine whether we have jurisdiction
to review the district court's rejection of these remaining
arguments.  Faced with the ambiguous record before us, we might
conceivably assume for the sake of argument that the district
court's rulings were based on the belief that a downward
departure was not legally permissible on the grounds cited.  We
could then proceed to analyze whether each of the many factors
cited by the defendant, either singly or in combination, could
justify a downward departure.

There are, however, at least two reasons, one formal
and one practical, for not taking this approach.  First, this
approach would require us to address one aspect of the merits of
the defendant's departure request before determining that we have
jurisdiction.  Second, this approach might well result in a
significant waste of time.  If we determined, after analysis,

(..continued)
> reduced mental capacity not resulting from
> voluntary use of drugs or other intoxicants,
> a lower sentence may be warranted to reflect
> the extent to which reduced mental capacity
> contributed to the commission of the offense,
> provided that the defendant's criminal
> history does not indicate a need for
> incarceration to protect the public.

that a departure was legally permissible on one or more of the grounds cited by Mummert and remanded the case to the district court, we might well learn that the district court had always intended to reject Mummert's departure request as a matter of discretion.

Accordingly, in cases such as this, where the record does not make clear whether the district court's denial of departure was based on legal or discretionary grounds, we believe that the appropriate course of action is to vacate the sentence and remand for the district court to clarify the basis for its ruling.[2]

This holding is consistent with our decision in United States v. Georgiadis, 933 F.2d 1219, 1222-24 (3d Cir. 1991). In that case, we were able to determine, based on the record, that the district court's refusal of a downward departure was based on discretionary grounds. See Id. at 1224. The defendant in that case contended, however, that a district court must do more than just make clear whether a refusal to depart is based on legal or discretionary grounds. Instead, the defendant contended that the

_____

[2]. The Tenth Circuit recently held that "unless [a district] judge's language unambiguously states that the judge does not believe he has authority to downward depart, we will not review his decision." United States v. Rodriguez, 1994 U.S. App. LEXIS 18697, 1994 WL 383186 (10th Cir. 1994). This rule appears to be designed to promote essentially the same objective as the rule we adopt in this case, i.e., to encourage district courts to make clear whether their departure rulings rest on legal or discretionary grounds. Under the Tenth Circuit's approach, however, a defendant whose departure request is rejected with an ambiguous ruling based on legal grounds would apparently be deprived of the appellate review to which he is statutorily entitled. Our approach would not allow this to occur.

"sentencing court must always indicate on the record that it knows it has authority to depart, considered the defendant's request to do so, and decided not to depart."[3]  Id. at 1222.  We held that such recitals are not mandatory.  Id. at 1222-23. Thus, Georgiadis did not concern the question whether a sentencing court must provide a record that is sufficient to enable us to determine whether we have appellate jurisdiction; rather, Georgiadis concerned the question whether a sentencing court that refuses to make a departure on discretionary grounds is required to provide additional statements.  Consequently, Georgiadis is consistent with our holding here.

IV.

For these reasons, we vacate the sentence imposed by the district court and remand for further proceedings consistent with this opinion.  In taking this approach, we emphasize that we have not reached any conclusion with respect to the question whether a downward departure on any of the grounds cited by Mummert would be legally permissible.

---

[3].  In Georgiadis, the defendant suggested that the record did not make clear whether the district court had denied his departure request on legal or discretionary grounds.  United States v. Georgiadis, No. 90-3224, Appellant's Br. at 21-26.  The government disagreed, stating that the record showed that the trial judge had made "a discretionary nonappealable refusal to depart."  No. 90-3224, Appellee's Br. at 25 (emphasis in original).  Our court agreed with the government's interpretation of the record.  See 933 F.2d at 1224.