**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Parker WRIGHT, Jr.,**
**Defendant–Appellant.**

**No. 94–5644.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 2, 1995.

Decided July 27, 1995.

Robert E. Simpson (argued), David G. Dake, Jimmie Baxter (briefed), Asst. Attys. Gen., Knoxville, TN, for plaintiff-appellee.

Andrew R. Tillman (briefed), Wynne Hall, Dwight E. Tarwater (briefed), Paine, Swiney & Tarwater, Herbert S. Moncier (argued and briefed), Knoxville, TN, for defendant-appellant.

W. Parker Wright, Jr., Knoxville, TN, pro se.

Before: MERRITT, Chief Judge; BATCHELDER, Circuit Judge; BERTELSMAN, Chief District Judge.*

---

* The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

MERRITT, C.J., delivered the opinion of the court, in which BERTELSMAN, D.J., joined. BATCHELDER, J. (pp. 242–244), delivered a separate dissenting opinion.

MERRITT, Chief Judge.

The defendant pled guilty to three instances of "mak[ing] a false statement or report" in order to obtain three bank loans in violation of 18 U.S.C. § 1014 (punishable by a maximum fine of $1 million and 30 years imprisonment), and he now appeals his sentence of 16 months imprisonment assessed under § 2F1.1 of the Guidelines governing bank fraud. (This sentence was calculated by beginning with a "base level" of 6 and adding 7 levels for causing a "loss" of $59,750 for one loan, $13,000 for a second and $100,-000 for a third, plus two levels for "more than minimal planning," plus two more levels under § 3B1.3 for using "special skills" as a "lawyer," minus three levels for acceptance of responsibility, equaling level 14 which carries a sentencing range of 15 to 21 months for a first offender with a clean record). He appeals on the ground that the Guideline section and its Commentary for the offenses in question were not followed by the district judge in sentencing. He contends that the concept to be followed in sentencing for bank fraud is the amount of "intended loss" or "actual loss" and that this principle was not properly applied because there was no loss in fact, none intended, and none likely to occur.

The real problem in this appeal, as in so many sentencing appeals, is the Commentary and the effort to create in the Commentary a legal rule designed to remove the district judge's discretion. Paragraph seven of the Commentary, having expressly established "actual loss," "intended loss" and "expected loss" (whichever is greater) as the governing legal rule for fraud cases, then—in a so-called "example"—immediately changes the concept from "actual loss" to another legal rule much more difficult to understand and apply because based on the legal concept of a "pledge" of assets. It states:

In fraudulent loan application cases and contract procurement cases, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets *pledged to secure the loan.*

Guidelines § 2F1.1, Commentary ¶ 7(b).

In this case the example does not fit the facts. There was no "pledge" on any of the loans in the ordinary legal sense of the word "pledge." The drafters of the Guidelines are lawyers and judges, and they presumably know that the word "pledge" or "pledged" has a distinct and determinative legal meaning.[1] On the first loan, the bank had the right in case of default to foreclose under a mortgage on a piece of real estate and the right to set off cash funds in other accounts—both of which the bank exercised resulting in no loss on the loan. On the third loan there was no loss because the defendant, Wright, was not the debtor on the loan but made a false statement about a deed of trust, and the debtor then collateralized the note to the bank's satisfaction when the bank raised the issue with the defendant.

The example in the Commentary is faulty, but the general words "actual loss," "intended loss" and "expected loss" are clear enough. These are the words that should be applied instead of the faulty example which changes the principle established in the rest of the Commentary. Because the District Court did not apply the words "actual loss," "intended loss" or "expected loss" (whichever is greater) but instead tried to apply an example that is far afield from the facts of this case, we remand the case to the District Court for resentencing.

In *Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1918, 123 L.Ed.2d 598

---

1. *Black's Law Dictionary* p. 1312 (4th Ed. 1951) defines "pledge" as a "bailment of goods to a creditor as security for some debt or engagement. A bailment or delivery of goods by a debtor to his creditor to be kept till the debt is discharged" [citing numerous cases and commentators].

(1993), the Supreme Court has advised us how to handle the situation:

> If, for example, commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the Guidelines. *See* 18 U.S.C. §§ 3553(a)(4), (b).

The Guideline itself, § 2F1.1 labeled "Fraud and deceit" says that "if the *loss* exceeded $2,000, increase the offense level as follows." The Guideline then gives a table with a column labeled "Loss (apply the greatest)" followed by a parallel column of numbers for increasing the offense level. Thus the Guideline itself requires "loss."

Obviously, the word "loss" means and includes the money a court may require as restitution and it means money which others may pay, but are not obligated to pay, on behalf of the defendant. "Loss" should not include amounts that a bank can and does easily recover by foreclosure, setoff, attachment, simple demand for payment, immediate recovery from the actual debtor and other similar legal remedies, including the sale of a "pledged" asset covered by the example. Our decision is consistent with previous decisions of this Circuit. In *United States v. Buckner*, 9 F.3d 452 (6th Cir.1993), we held that loan repayments had to be used to reduce "loss" because the amounts had already been recovered by the bank. 9 F.3d at 453–54. Also, in *United States v. Lavoie*, 19 F.3d 1102 (6th Cir.1994), we again held that "loss" should not include amounts the bank could recover from other assets. 19 F.3d at 1105.

Accordingly, the judgment of the District Court is reversed and the case remanded for resentencing.

BATCHELDER, Circuit Judge, dissenting.

I dissent from the majority's opinion. I would affirm the district court's calculation of the loss under the Sentencing Guidelines.

## I.

As a preliminary matter, I think it is important to set forth the specific facts surrounding the fraudulent loan applications. Count One involved a $675,000 home loan that the defendant obtained from First National Bank of Knoxville. To secure this loan, the defendant signed a promissory note/security agreement and deed of trust in which he pledged certain real estate as additional collateral. The defendant falsely stated in the deed of trust that this property was free from all encumbrances, when in fact the defendant previously had pledged it to obtain $260,000 in loans from First American National Bank. The promissory note/security agreement gave First National a right of setoff against the defendant's deposit account with the bank. The promissory note/security agreement also contained a box to check if the deposit account was pledged as collateral, but that box was not checked.

On February 12, 1993, First National discovered that it did not hold a first lien on the property. On that date, the outstanding loan balance was $603,000. The home eventually was sold for $543,250, leaving First National with a $59,750 loss. On February 17, 1993, First National exercised its right of setoff against the defendant's deposit account, which contained about $63,000. Thus, First National ultimately recovered the entire amount of the loan.

Count Two involved a $100,000 loan to the defendant from Citizens National Bank. As security, the defendant executed a deed of trust to Citizens National which conveyed real estate. The defendant falsely informed Citizens National that it would have a first mortgage on the property and provided as proof a fraudulent certificate of title examination bearing the forged signature of a local title attorney. In fact, First American held a lien on the property. After the discovery of the fraud and the sale of the property, the remaining balance of the First American debt and most of the Citizens National loan was paid with the proceeds.

Count Three related to a request by the defendant that Citizens National make a loan to his business partner, Brickford Faucette, in the amount of $50,000 to $100,000. The defendant indicated that the loan would be secured by an assignment of a deed of trust held by Mr. Faucette to secure payment of a

$185,000 note owed by a fictitious "Anthony K. Richardson." The defendant also prepared a title examination which falsely stated that the Richardson deed of trust was recorded in the Blount County, Tennessee, Register's Office. As a result, Citizens Bank approved a loan to Mr. and Mrs. Faucette in the amount of $100,000. Following discovery of the fraud, this loan subsequently was secured and collateralized to the satisfaction of Citizens National.

## II.

Based on these facts, the district court properly calculated the loss under the relevant Sentencing Guidelines. Under § 2F1.1 of the Guidelines, a court sentences according to the amount of the loss. U.S.S.G. § 2F1.1(b)(1) (1993). Because this case involves fraudulent loan applications, application note 7(b) requires the court to determine the "actual loss," which is defined as "the amount of the loan not repaid *at the time the offense is discovered.*" U.S.S.G. § 2F1.1, comment. (n.7(b)) (1993) (emphasis added). In the case at bar, the district court calculated the loss at the time of discovery and found an approximate loss of $59,750 on Count One, $13,000 on Count Two, and $100,000 on Count Three.[1]

Application note 7(b) also permits calculating loss according to expected loss, but only "if the loss has not yet come about." *Id.* In this case, although the loans were either subsequently repaid or fully collateralized to the satisfaction of the banks, the loss on all three counts had "come about" at the time of discovery.

For Count One, the court properly refused to reduce the amount of the loss below $59,-750 because First National could not recover any more amounts "from any assets pledged to secure the loan." Instead, the bank recouped its loss after it discovered the fraud by exercising its right of setoff on a deposit account not pledged to secure the loan—an action that the Guidelines do not recognize as a proper reduction to actual loss.

## III.

I have several specific problems with the majority opinion. First, I find no inconsistency between § 2F1.1 of the Guidelines and the example in application note 7(b) to that section. The example in application note 7(b) simply demonstrates that the definition of "actual loss" in the fraudulent loan context excludes amounts that the bank subsequently recovers or can expect to recover from pledged assets. Further, in *United States v. Lavoie,* 19 F.3d 1102, 1105 (6th Cir.1994), *United States v. Buckner,* 9 F.3d 452, 453–54 (6th Cir.1993), and *United States v. Chichy,* 1 F.3d 1501, 1508 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 620, 126 L.Ed.2d 584 (1993), we employed § 2F1.1 and the example in application note 7(b) with no difficulty.

Second, as the majority recognizes, a pledge is different from a setoff. A pledged asset has a constant and intrinsic value specific to the secured loan. A deposit account subject to a setoff, however, can fluctuate and exists entirely independent of any loan. Given that a pledge admittedly is distinct from a setoff and that the example in application note 7(b) only excludes pledged assets from the definition of loss, I believe the majority improperly narrows the Guideline's definition of actual loss purely by judicial fiat.

Third, *Lavoie* and *Buckner* simply do not support the proposition that the term "loss" does not include "amounts that a bank can and does easily recover by ... setoff, attachment, simple demand for payment, immediate recovery from the actual debtor and other similar legal remedies...." Majority Opinion at p. 242. In fact, *Buckner* and *Lavoie* stand for the assertion that the example in application note 7(b) is alive and well and strictly construed. In *Buckner,* we reduced the loss by the amount that the defendant repaid *before* the bank discovered the fraud because the example in application note 7(b) required measuring loss at the time of discovery. *Buckner,* 9 F.3d at 454. In *Lavoie,* we again applied the example in application note 7(b) and reduced the loss by the amount

---

1. The majority asserts that no loss occurred on Count Three because the defendant "was not the debtor on the loan" and "the debtor then collateralized the note." Majority Opinion at p. 241.

If we follow the Guidelines and calculate loss at the time of discovery, however, then a loss did occur that would not have occurred but for the false representations made by the defendant.

the bank gained when it auctioned off the automobile that was the collateral for the loan. *Lavoie,* 19 F.3d at 1105. The majority cites not one case that actually supports its position, and my research suggests a paucity of them. There are, however, any number of fraudulent loan application cases holding that loss includes those amounts that the majority's opinion now requires to be excluded in this circuit. *See United States v. Bennett,* 37 F.3d 687, 695 (1st Cir.1994) (holding that the district court erred in reducing the loss by the amount repaid as part of a civil settlement after discovery); *United States v. Mummert,* 34 F.3d 201, 204 (3d Cir.1994) ("A defendant in a fraud case should not be able to reduce the amount of loss for sentencing purposes by offering to make restitution after being caught."); *United States v. Jindra,* 7 F.3d 113, 113–14 (8th Cir.1993) (holding that the loss could not be reduced by unpledged amounts recovered after discovery and before sentencing), *cert. denied,* —— U.S. ——, 114 S.Ct. 888, 127 L.Ed.2d 82 (1994).

Fourth, the majority's ruling violates the underlying assumption of the Guidelines that a sentence is fundamentally based on the criminal act, not merely on the ultimate harm to the victim. For its definition of loss, application note 7 invokes the commentary to § 2B1.1, which governs larceny, embezzlement, and other forms of theft. The examples in application note 2 to § 2B1.1 make clear that a defendant is sentenced for the act of committing theft, regardless of whether the stolen property is eventually returned:

> (1) In the case of a theft of a check or money order, the loss is the loss that *would have occurred* if the check or money order had been cashed. (2) In the case of a defendant apprehended taking a vehicle, the loss is the value of the vehicle *even if the vehicle is recovered immediately.*

U.S.S.G. § 2B1.1, comment. (n.2) (1993) (emphasis added). For fraudulent loan application crimes, the same logic governs: The crime is not in the failure to repay, but in the making of a fraudulent loan application.

Finally, I am troubled by the implications of the majority's ruling. Time and again, the judicial branch has respected "the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.'" *Griffin v. Illinois,* 351 U.S. 12, 17, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) (quoting *Chambers v. Florida,* 309 U.S. 227, 241, 60 S.Ct. 472, 479, 84 L.Ed. 716 (1940)). I believe that for the crime of fraudulent loan applications, however, the majority has loaded the scales in favor of the wealthy. Under the precedent established today, a wealthy defendant whose assets are reachable through "setoff, attachment, simple demand for payment ... and other similar legal remedies" by the bank he defrauded, or who makes immediate restitution after his fraudulent activity is discovered, will be entitled to a lesser sentence than the indigent defendant who commits exactly the same offense. If we refuse to calculate loss at the time of discovery, reduced only by assets specifically pledged as collateral by the defendant, wealth will become a determining factor in the calculation of sentences for fraudulent loan application crimes. Surely this proposition is repugnant to our philosophy of criminal justice.

For the forgoing reasons, I therefore respectfully dissent from the majority's opinion.