UNITED STATES COURT OF APPEALS

_____

UNITED STATES OF AMERICA,      )
                               )
     Plaintiff-Appellee,       )
                               )
v.                             )          No. 95-5240
                               )     (D.C. No. 94-CR-174-C)
JOE W. GWARTNEY,               )     (N. Dist. of Okla.)
                               )
     Defendant-Appellant.      )

_____

**ORDER AND JUDGMENT**[*]

_____

Before **ANDERSON, BARRETT, and MURPHY**, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); Tenth Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Joe W. Gwartney (Gwartney) appeals from the sentence he received following his plea of guilty to five counts of making

_____

[*]This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of Tenth Cir. R. 36.3.

false entries in bank records and causing a criminal act in violation of 18 U.S.C. §§ 1005 and 2(b).

The sole issue on appeal is whether the district court erred in adopting a Presentence Investigation Report recommending a 7 level increase in Gwartney's total offense level pursuant to USSG § 2F1.1(b)(1)(H)("If the loss exceeded $2,000, increase the offense level as follows: . . . (H) More than $120,000, add 7") in sentencing Gwartney.

Gwartney was a shareholder, officer and director, of the Exchange Bank of Skiatook, Oklahoma (Bank) from August, 1981, until July, 1992. He was a member of Bank's loan committee. His duties included making loans and signing cashier's checks issued by Bank. From February, 1989, to July, 1992, Gwartney made or caused to be made numerous false entries in the books, reports and statements of Bank to transfer funds from one account to another and thereby maintain the pretense that certain nonperforming loans were in fact performing and to otherwise deceive Bank relative to the true status of the loans. Gwartney's transactions "were admittedly illegal." (Opening Brief of Appellant at 2).

Gwartney's activities were uncovered on the evening of July 17, 1992, following an internal audit of accounts which Gwartney handled. During the audit, Bank employees determined that $125,000 in unauthorized withdrawals were outstanding as a result of Gwartney's illegal transactions. Gwartney was placed on leave from

Bank pending further investigation.  On July 22, 1992, one banking day after his offense had been discovered, Gwartney repaid the $125,000.

Approximately two and one-half years later, Gwartney was indicted and charged with 37 counts of making false entries in bank records and causing a criminal act in violation of 18 U.S.C. §§ 1005 and 2(b).  He pled guilty to five counts pursuant to a plea agreement.

Paragraph 29 of Gwartney's Presentence Investigation Report (PSR I) stated in part:

> The false representations that Gwartney made to the loan committee, as well as the crucial information that he deliberately concealed, made it impossible for the committee to make informed decisions regarding the loans manipulated by Gwartney in this case. . . . Loan accounts totaling $303,137.88 have been deemed uncollectible and charged off since Gwartney's departure from the bank in July 1992.  Gwartney's criminal acts clearly contributed to those bank losses.  <u>However, it is impossible to estimate with reasonable precision the extent to which loss amounts are attributable to the false entries made by Gwartney, or --- other acts committed by Gwartney in violation of bank policy.  Therefore, although the false entries were an integral part of an overall scheme that harmed the bank, for guideline purposes, no specific loss value has been determined.</u>

(R., PSR I at 7 (emphasis added)).

PSR I set forth  a total offense level of 8, reflecting: a base offense level of 6; a 2 level increase reflecting repeated acts over a period of time; a 2 level increase reflecting Gwartney's position of trust as an officer and director; and a 2

- 3 -

level reduction for acceptance of responsibility. Significantly, PSR I did not include any offense level increases for losses pursuant to §2F1.1.

PSR I set forth a criminal history category of II. Based on a total offense level of 8 and criminal history category of II, PSR I set forth a guideline range for imprisonment of 4 to 10 months.

The district court received a revised Presentence Investigation Report (PSR II) on October 10, 1995. Paragraph 31 stated:

> The total loss attributable to Gwartney's criminally false entries in this case is $125,000, which represents the total amount of unauthorized withdrawals outstanding at the time the offense was discovered. The $125,000 consists of the $50,000 that was missing from the bank's cashiers check account at the time the offense was discovered, and the $75,000 that was missing from . . . draw accounts.

(R.,PSR II at 8 (emphasis added)).

PSR II set forth a total offense level of 14, reflecting: a base offense level of 6; a 7 level increase pursuant to §2F1.1(b)(1)(H) reflecting a loss of more than $120,000; a 2 level increase reflecting repeated acts over a period of time; a 2 level increase reflecting Gwartney's position of trust as an officer and director; and a 3 level reduction for acceptance of responsibility.

PSR II set forth a criminal history category of II. Based on a total offense level of 14 and a criminal history category of II, PSR II set forth a guideline range for imprisonment of 18 to 24 months.

Gwartney objected to the finding in PSR II that a loss of $125,000 was attributable to his criminal acts, contending that since all affected amounts were reimbursed immediately upon discovery of the offense, a finding of zero loss was appropriate. The probation officer preparing PSR II disagreed:

> The probation officer would maintain that all available case law supports a loss valuation applicable at the time the loss was detected. The . . . discussion of an offense level reduction for immediate repayment is in the context of 'offsets that the bank can immediately apply against the overdraft,' which is a circumstance that clearly does not apply in this case. Gwartney's ability to secure a loan five days after discovery of the offense in order to repay . . . does not constitute 'immediate repayment' in that context. Therefore the probation officer finds that a loss of $125,000 results in a seven level increase, pursuant to USSG §2F1.1(b)(H).

(R., Addendum To The Presentence Report at 22).

The district court adopted PSR II. (Appendix to Opening Brief of Appellant, Tab 6 at 76). The court sentenced Gwartney to 18 months imprisonment on each of the five counts, said sentences to run concurrently, and to five years supervised release. The district court also fined Gwartney $10,000.

On appeal, Gwartney contends that the district court "erred in refusing to setoff his contemporaneous and immediate repayment against the gross amount of the loss calculated under U.S.S.G. § 2F1.1" and that we should reverse the sentence imposed by the district court and remand for resentencing. (Opening Brief of Appellant at 17). The government responds that "[t]he district court correctly decided that Gwartney should not receive credit for

amounts he paid back to the victim bank and that the 'loss' therefore, was $125,000." (Brief of Appellee at 12).

"Clearly, the government has the burden to prove the amount of loss [under § 2F1.1] by a preponderance of the evidence." United States v. McAlpine, 32 F.3d 484, 487 (10th Cir. 1994), cert. denied, ___ U.S.___ (1994). In United States v. Haddock, 12 F.3d 950, 960 (10th Cir. 1993) we reviewed the "loss to victims" under § 2F1.1. In that case, defendant Haddock was the chairman of the board and chief executive officer of the Bank of White City as well as the president and sole shareholder of First Finance, Inc. which he formed for the purpose of acquiring loans from the FDIC. He was convicted of various counts of bank fraud, concealing relevant information, and filing a false financing statement. In Haddock, we held:

> [T]he enhancement [under § 2F1.1] is only for loss to victims, not for gain to defendants.
>
>       \*          \*          \*
>
>   Actual loss under section 2F1.1 is 'the amount of money the victim has actually ended up losing at the time of sentencing, not what it could have lost. Kopp [United States v. Kopp, 951 F.2d 521 (3rd Cir. 1991)], 951 F.2d at 531. A court should measure actual loss by 'how much better off the victim would be put but for the defendant's fraud.' Id. This measure properly includes all types of losses but does not include those losses that are not attributable to the defendant's fraud. Furthermore, only net loss is considered; anything received from the defendant in return reduces the actual loss. Smith, 951 F.2d at 1167.

12 F.3d at 960-61 (emphasis added).

In <u>Haddock</u>, we reviewed the loss caused by each of Haddock's crimes and we reduced the actual loss for purposes of § 2F1.1 from the $143,938.93 set forth in the presentence report to "approximately $76,000." <u>Id</u>. at 963. We eliminated entirely for purposes of § 2F1.1 the $250,000 loss alleged in count III, holding: "Haddock repaid the $250,000 down payment . . . that is the subject of count three. White City therefore did not lose anything because of this offense." <u>Id</u>. at 962. See also <u>United States v. Chatterji</u>,46 F.3d 1336, 1340 (4th Cir. 1995)(loss under § 2F1.1 is the actual, probable, or intended loss to the victim and a defendant's gain may not support an enhancement if there is no actual or intended loss to the victims); <u>United States v. Moored</u>, 38 F.3d 1419, 1427 (6th Cir. 1994)(loss under § 2F1.1 is not the potential loss but is the actual loss to the victim, or intended loss, whichever is greater); <u>United States v. Mummert</u>, 34 F.3d 201, 205 (3rd Cir. 1994)(loss is the actual loss to the bank at the time of sentencing reduced by the amount the lending institution has recovered or can be expected to recover from any assets pledged to secure loan).

Applying <u>Haddock</u> here, we hold that the district court erred in sentencing by refusing to set off Gwartney's repayment in determining the amount of Bank's loss pursuant to § 2F1.1

**REVERSED** and **REMANDED** for resentencing.

Entered for the Court:


James E. Barrett,
Senior United States
Circuit Judge