**UNITED STATES of America,**

v.

**Christopher CEFALO, Appellant.**

**No. 01–3045.**

United States Court of Appeals, Third Circuit.

Submitted April 25, 2002.

Decided May 3, 2002.

Before BECKER, Chief Judge, SCIRICA, and RENDELL, Circuit Judges.

OPINION

BECKER, Chief Judge.

This appeal by defendant Christopher Cefalo from a judgment in a criminal case entered pursuant to a plea agreement presents the oft recurring question whether a sentencing court that declined the invitation of the defendant to depart downward from the Guideline Range under U.S. Sentencing Guideline § 5K2.0 understood that it had authority to depart but exercised its discretion not to, or rather was ruling (as a matter of law) that it lacked power to depart. The problem frequently arises where, as here, the District Court has already exercised its discretion to depart downward under § 5K1.1 of the Guidelines (on account of the defendant's cooperation) and plainly thinks that that departure was enough, but does not clarify its position under § 5K2.0. The generally

applicable rule is stated in *United States v. Mummert,* 34 F.3d 201, 205 (3d Cir.1994), where we held that where it is impossible to tell whether the district court's ruling is based upon the proper exercise of discretion or an improper interpretation of the applicable legal standard, the correct course of action is to vacate the sentence and remand to the district court for clarification and reconsideration of its ruling.

In this case Cefalo made a strong argument for a downward departure additional to that under § 5K1.1 based upon his alleged vulnerability to abuse in prison. *See United States v. Yeaman,* 248 F.3d 223, 232 (3d Cir.2001), *cert. denied* — U.S. ——, 122 S.Ct. 816, 151 L.Ed.2d 699 (2002). In support, Cefalo presented evidence regarding his sexual orientation, his frail physique, and his history of mental illness, described at length in the margin.[1]

In ruling on the request, the Court stated:

> Here the Government, though, in recognition of his cooperation, has moved to cut that sentence in half, down to ten years. And we have two deaths here, two deaths from heroin supplied by this defendant. And, to my knowledge, there's been no other cases in this District that I'm aware of where two deaths resulted from heroin supplied by one defendant. There have been those where one death resulted and they have gotten at least ten years. There isn't one that got less than that ... So I think the Government has been very fair. I think you struck a great bargain in getting them to move for a downward departure of ten years. So I'll grant the Government's motion for downward departure and I'll deny the defense motion for additional.

As the foregoing text illustrates, the Court did not make the clear statement counseled by *Mummert.* That said, we are satisfied that it was aware of its authority to depart downward.

First, the government in its papers, acknowledged that the district court has the discretion to depart from the Sentencing Guidelines on this basis:

> Although it is not mentioned as a departure ground in the Sentencing Guidelines, unusual vulnerability to abuse in prison may be a ground for a departre,

---

1. The defense expert, Elliott L. Atkins opined that:

> Christopher Cefalo presents as an extremely fragile and vulnerable individual who, because of his physical stature (he currently weighs 120 pounds), his severe emotional problems (particularly his social phobia and avoidant personality disorder) and his history of sexual victimization (including his sexual identity confusion and the distorted sexual perceptions that have resulted from his having been sodomized), Mr. Cefalo would be devastated by a lengthy period of incarceration. To a large extent, he remains a child in a man's body; he is defenseless. He is neither mentally nor physically equipped to deal with the circumstances he would be facing in a prison setting. The effects of incarceration for Mr. Cefalo would significantly exceed the effect of incarceration upon most others. His fragility and vulnerability would clearly contraindicate a prolonged period of incarceration. The prison setting would certainly not address or treat his underlying psychiatric disorders, but would fuel regression that would be devastating for him both physically and emotionally. There is no question that Christopher Cefalo is more physically and mentally vulnerable than the average defendant in regard to any period of incarceration. With this in mind, it is my opinion that Christopher Cefalo is likely to be exposed to extraordinary punishment because of his unique and extraordinary history, personality and emotional disturbance. In prison, victimization or assault against an individual as vulnerable as Mr. Cefalo would make prison life especially dangerous for such an individual.

> Report of Elliot L. Atkins, Licensed Psychologist.

but should be reserved for extraordinary cases. *United States v. Wilke*, 156 F.3d 749, 753 (7th Cir.1998); *United States v. Drew*, 131 F.3d 1269, 1271 (8th Cir. 1997); *United States v. Maddox*, 48 F.3d 791 (4th Cir.1995)....

Second, at the Sentencing Hearing, the defense moved into evidence the sixteen-page letter from its expert Dr. Atkins to defense counsel about Cefalo's vulnerability, *see supra* n. 1, which the court admitted; it then specifically held in abeyance the government's motion for downward departure while it listened to the testimony of Dr. Atkins on the defense motion about his evaluation of Cefalo.

Third, during the course of Dr. Atkins' testimony, the District Court stated that it had read his report, and then asked a series of questions about Dr. Atkins' conclusions, including: whether he would come to a different conclusion if Cefalo had a larger build; whether release from prison would present problems for Cefalo; whether chemical treatment would help Cefalo; how the treatment Cefalo had received was inadequate; and, what treatment Dr. Atkins would have provided to Cefalo if Cefalo had been his patient. Moreover, the Court asked Atkins about his prior testimony in the Middle District of Pennsylvania; what factors make Cefalo's case so extraordinary; the nature of his family's mental disorders; what Dr. Atkins would consider an appropriate sentence; whether Dr. Atkins had testified in a case where there were two deaths from heroin distribution; and the resources available in a federal prison for someone like Cefalo.

Fourth, the issue was then argued by counsel.

Under these circumstances, we are satisfied that the District Court understood its authority to depart and, although neglecting to make its *ratio decidendi* clear,

exercised its discretion not to do so. *Cf. United States v. Castano–Vasquez*, 266 F.3d 228, 234 (3d Cir.2001) ("[A] district court ... not ... obligated to explain its refusal to depart downward."); *United States v. Georgiadis*, 933 F.2d 1219, 1222 (3d Cir.1991) ("[A] sentencing court does not commit reversible error under the Sentencing Reform Act by failing to state expressly on the record that it has considered and exercised discretion when refusing a defendant's requested downward departure under the Guidelines."). Under our jurisprudence, we are constrained to dismiss the appeal for lack of appellate jurisdiction. *See United States v. Denardi*, 892 F.2d 269, 271 (3d Cir.1989). Alternately, if Cefalo's argument is construed as challenging the extent of the downward departure that was given, the decision to deny a further downward departure is also not subject to appellate review. *United States v. Torres*, 251 F.3d 138, 151–52 (3d Cir.2001).

The appeal will be dismissed.