

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-12-2002

# USA v. Sammut

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3706

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Sammut" (2002). *2002 Decisions.* Paper 351.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/351

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-3706
_____

UNITED STATES OF AMERICA

v.

MICHAEL P. SAMMUT,

                              Appellant
_____


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Crim. No. 01-cr-00037-2
District Judge:  The Honorable Garrett E. Brown, Jr.
_____


Submitted Under Third Circuit LAR 34.1(a)
June 7, 2002
_____


Before: NYGAARD, BARRY, and MAGILL, Circuit Judges

(Opinion Filed: June 12, 2002 )
_____


OPINION OF THE COURT
_____


BARRY, Circuit Judge

     Appellant Michael P. Sammut pleaded guilty to a one-count Indictment charging
him with conspiracy to manufacture, distribute, and possess with intent to distribute
Ecstasy, a Schedule I controlled substance, in violation of 21 U.S.C.  846.  At
sentencing, Sammut asked the District Court to depart downward from the United States
Sentencing Guidelines ("Guidelines") based on (1) an overstated criminal history; (2)
aberrant behavior; (3) sentencing factor manipulation and/or sentencing entrapment; and
(4) an overstated drug amount.  The District Court granted Sammut's request on the first
ground but declined to depart on the remaining grounds.  Sammut was then sentenced to
74 months of imprisonment and three years of supervised release and ordered to pay a
$100 special assessment and a $2,000 fine.  He appeals his sentence.  We have
jurisdiction pursuant to 28 U.S.C.  1291 and will affirm.

     Sammut raises three arguments in his appeal.  First, he contends that the District
Court erred by failing to make factual findings as to the existence of what he describes as
"sentencing entrapment" and/or "sentencing factor manipulation."  Second, Sammut
asserts that the District Court incorrectly concluded that it lacked authority to depart
downward on these grounds.  Third, he maintains that the District Court wrongly
attributed 40.8 kilograms (90 pounds) of drugs to him.  Given the interrelatedness of
Sammut's first and second arguments, we will address them together.

     Sammut contends that the District Court's decision not to depart downward for
sentencing entrapment and/or sentencing factor manipulation was error because the court
mistakenly believed that it lacked the authority to do so.  We do not read the court's
sentencing remarks as indicating a belief that it lacked the power to depart downward on
these grounds.  The District Court stated:

I've considered your applications for downward departure on the grounds of aberrant behavior, sentencing factor[] manipulation, entrapment, overstated drug amount and combination of factors. I will not downwardly depart on any of those grounds individually or in combination thereof. Even if I had the power to do so I certainly would not exercise my discretion in this situation. We don't have an aberrant behavior situation and I would not exercise my discretion in that regard. Rather, we have a rather consistent significant drug dealer and drug manufacturer. Based upon submissions in the Pre-Sentence Report and the Government's submissions and its correspondence that we have referred to of August 29th and September 18th, I certainly can't find an overstated drug amount or any sentencing factor[] manipulation, or sentencing enhancement under either standard. Therefore, I decline to exercise my departure authority to depart downward on any of those bases.

App. at 80 (emphasis added). These remarks reveal that the District Court understood that it had the power to depart on all of the grounds presented but chose not to do so. Accordingly, we lack jurisdiction to review that discretionary decision. See United States v. Denardi, 892 F.2d 269, 272 (3d Cir. 1989).

Sammut counters that the District Court's remarks were made only in response to the request for a downward departure presented by Sammut's co-defendant, Nicholas J. Bresler, who was sentenced just prior to Sammut, and failed to make factual-findings specifically as to him. We note, for what it is worth, that when Sammut's turn came, neither Sammut nor his counsel even mentioned the sentencing entrapment/sentencing factor manipulation grounds for a downward departure now pressed before us. The AUSA, however, reminded the Court that there were "a few other departure motions outstanding." App. at 93. The Court thereafter ruled that it found no basis for an aberrant behavior departure, and denied those motions brought by Bresler which Sammut had joined  motions which included sentencing entrapment and/or sentencing factor manipulation  implicitly adopting the explicit statement it had made in the course of denying Bresler's requests. In any event, a sentencing court that declines to depart from the Guidelines is not required to give a statement of reasons for its decision. United States v. Georgiadis, 933 F.2d 1219, 1223 (3d Cir. 1991).

Sammut also argues that the District Court improperly found that the quantity of drugs attributable to him was 40.8 kilograms (90 pounds). We review the District Court's factual finding for clear error. United States v. Yeaman, 194 F.3d 442, 456 (3d Cir. 1999). Under the Guidelines, a sentencing court uses the "agreed-upon" quantity of drugs to calculate the base offense level of a defendant convicted of a controlled substance offense in a reverse sting. U.S.S.G.  2D1.1(a)(3), (c) & cmt. n.12 (2000). This quantity and the corresponding offense level may be reduced if "the defendant establishes that he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance." U.S.S.G.  2D1.1, cmt. n.12 (2000); see United States v. Raven, 39 F.3d 428, 434-35 (3d Cir. 1994). Sammut asserts that he has made such a showing. We disagree.

The District Court reasonably concluded that Sammut and Bresler agreed to produce 90 pounds of Ecstasy. In the transcripts of telephone conversations between Sammut ("Mike") and Bresler ("Nick") and the undercover government agent ("Mac"), the defendants repeatedly affirm that they are willing and able to produce 90 pounds of Ecstasy with the 15 gallons of MDP2P that Mac is able to supply. For example, Sammut reassures Mac that Bresler wants to do the deal (purchase the 15 gallons of MDP2P from Mac, manufacture 90 pounds of Ecstasy with it, and sell a portion of the Ecstasy back to Mac at a discount price). App. at 50. Sammut also confirms that he is "still in the picture." App. at 52. When Mac directly asks Sammut if he and Bresler are capable and still willing to produce the 90 pounds of Ecstasy, the following exchange occurs:

MAC: That's what I mean, I didn't want him [Bresler] thinking that it was like, well, this was my idea that I approached you and said, hey, I can get this, whatever, like that. I mean you  you  I mean you're the one that said, hey, if you can get, you know, the other stuff for this, that you knew somebody that could do something with it.

MIKE: Right.

        MAC:  Right?  Okay.
        MIKE:  Yeah.  And he   he could do   you know, and this is exactly
what we'll do with it, you know.  It's just a matter of (indiscernible), you
know, being able to facility [sic] these type of things.
        MAC:  Okay.
        MIKE:  (Indiscernible).
        MAC:  Okay.  Because, yeah, I mean he was kind of like   I mean
even with the amount, I mean I told you it comes in certain increments.
There really ain't nothing that I could do about that.
        MIKE:  Right.
        MAC:  You know, I mean that's something we got to deal with.  But
it wasn't like   I mean like this wasn't like I decided all of the sudden, hey,
let me see if   if you know
        MIKE:  Well, Nick wants to do this.
        MAC:  Okay.
        MIKE:  Nick is going there to do this.
        MAC:  Okay.
        MIKE:  I mean I just happen to be, you know, along for the ride
kind of thing.  I'm just   you know, I'm just making sure, you know, my
end is taken care of.
        MAC:  Right.
        MIKE:  You know, and everything's out on the table.
        MAC:  Okay.  But you definitely will be able to take care of some of
it?
        MIKE:  Yes, I will.
        MAC:  Okay.
        MIKE:  And when I'm back there, there's someone I can always go
and talk to.
        MAC:  Right.
        MIKE:  I'll go and talk to him.  And, uh, you know, I'll   it will be
good.  It will work out real well, Mac.
        MAC:  Okay.

App. at 55-57.  These statements and others amply support the District Court's finding
that Sammut and Bresler agreed to produce 90 pounds of Ecstasy.  The District Court's
finding was not clearly erroneous.
    For the foregoing reasons, we will affirm the judgment of the District Court.




TO THE CLERK OF THE COURT:
    Kindly file the foregoing Opinion.

                              /s/ Maryanne Trump Barry
                              Circuit Judge