

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-4-2006

# USA v. Samuelson

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4280

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Samuelson" (2006). *2006 Decisions.* Paper 361.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/361

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4280
_____

UNITED STATES OF AMERICA

v.

KENNETH J. SAMUELSEN,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 05-cr-00159)
District Judge:  Honorable James M. Munley
_____

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2006

Before:  FUENTES, FISHER and McKAY,[*] *Circuit Judges*.

(Filed: October 4, 2006)
_____

OPINION OF THE COURT
_____

---

[*]The Honorable Monroe G. McKay, United States Circuit Judge for the Tenth
Circuit, sitting by designation.

FISHER, *Circuit Judge*.

At issue in this appeal is whether a district court must, when imposing sentence on a criminal defendant, explicitly consider and resolve a pending motion for downward departure. We have previously rejected this claim, and we now reaffirm that holding in light of *United States v. Booker*, 543 U.S. 220 (2005).

I.

Kenneth J. Samuelsen started embezzling money in early 2002. Only a few months after accepting a position as accounting manager for a Pennsylvania linen supply company, he began to steal and forge company checks. The checks were made payable to credit card companies or an investment firm, with the proceeds being used to subsidize his increasingly lavish lifestyle. The scheme was concealed through false entries in the company's check registry, and it went undetected for more than two years, until federal agents were alerted to the theft in November 2004. Samuelsen had, by that time, stolen more than $1.7 million. (A. 177-83.)

Samuelsen immediately admitted to the crime. He explained that he had initially engaged in the scheme in order to satisfy credit card debts but that he had soon developed a "shopping addiction," leading to more purchases and more embezzlement. He claimed that psychological counseling would be necessary to address the problem. (A. 182-83.)

Samuelsen pled guilty in April 2005 to one count of possession of forged checks with the intent to deceive another person, in violation of 18 U.S.C. § 513(a). A

2

presentence report found, in accordance with the plea agreement, that the statutory maximum term of imprisonment under the United States Code was ten years and that the range of imprisonment prescribed by the United States Sentencing Guidelines was thirty-seven to forty-six months. The report mentioned the possibility of a defense motion for downward departure, based on Samuelsen's "personal background and psychological characteristics," but it did not offer any recommendation on the disposition of such a motion. (A. 177, 191-92; Presentence Report 3-4, 18, 20.)

The anticipated motion, titled "motion for sentence below the guidelines range or for downward departure," was filed thereafter. It asserted that a downward departure was appropriate under section 5K2.0 of the Guidelines based on two considerations: (1) "extraordinary post-offense rehabilitation" and (2) "acceptance of responsibility substantially in excess of that ordinarily present." The motion argued that Samuelsen had demonstrated exceptional rehabilitation by obtaining a new job and commencing psychological counseling and that he had shown outstanding acceptance of responsibility by immediately admitting his guilt, assisting in the investigation of the crime, and making full restitution to the victim company. Psychological reports attached to the motion attributed Samuelsen's criminal conduct to self-esteem issues and confirmed his remorse and efforts to rehabilitate. (A. 35-40, 154-55, 164-65.)

Three witnesses testified at the sentencing hearing, held in September 2005. An officer of the victim company stated that the embezzlement had seriously harmed the

business's efforts to expand and had damaged its reputation in the community. She also noted that, although full restitution had been made, most of the money had been secured through the seizure of Samuelsen's investment account and the remainder – approximately $700,000 – had been paid by Samuelsen's mother on his behalf. An examining psychologist opined, consistent with the previously submitted reports, that Samuelsen's criminal activity could be attributed to feelings of inferiority and stated that Samuelsen was unlikely to repeat his crimes in light of ongoing treatment. Samuelsen's mother also testified, indicating that she had loaned the restitution money to her son in order to "make things right" for the victim company as quickly as possible. She further noted that her son had repaid approximately $100,000 to her, through the sale of "[c]ars and jewelry." (A. 90-113.)

After granting counsel and the defendant an opportunity to speak, the District Court offered an evaluation of the evidence. It characterized Samuelsen as "basically a good man who made a very serious mistake" and suggested that his criminal conduct was likely attributable to psychological problems. It agreed with the defense witnesses that Samuelsen posed a low risk of recidivism. (A. 113-26.)

But the District Court concluded that these considerations did not warrant a sentence below the Guidelines range. Samuelsen had "a good family" and "a great education," and his self-esteem issues could not excuse his criminal conduct. He had stolen an "enormous" amount of money to indulge himself but, as the pre-sentence report

4

pointed out, he had not even satisfied his child support obligations. He had not "[come] forward and made a confession" or "[gone] to the employer and . . . authorities and unveiled all of the problems," but had waited until law enforcement had discovered the theft before admitting to the crime. That crime had caused serious harm to the business; yet, he was avoiding a lengthy term of imprisonment – likely above fifty-one months – by virtue of a favorable plea agreement. (A. 124-28.)

The District Court imposed, based on its weighing of the factors under 18 U.S.C. § 3553(a), a sentence of thirty-seven months' imprisonment, at the low end of the Guidelines range. It noted that the sentence "would have been more, except the [g]overnment has made a strong appeal, making a recommendation of [thirty-seven months]." (A. 123-24, 128.)

One item that the District Court failed to mention explicitly during the hearing was the motion for downward departure. It addressed the exhibits to the motion, including the psychological reports, but it closed the proceedings – without objection by the parties – without stating whether the request for a downward departure was granted or denied. It did, however, indicate in the written statement of reasons accompanying the judgment of sentence that "the court finds no reason to depart." (A. 195.)

The lack of any further explanation forms the basis for this appeal. Samuelsen argues that "[t]he sentence was imposed in violation of the law because the District Court failed to consider and decide [the] motion for downward departure on account of . . .

5

exceptional post-offense actions to rehabilitate himself and take full responsibility for his crime."[1]  We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.  *See United States v. Cooper*, 437 F.3d 324, 327-28 & n.4 (3d Cir. 2006); *see also United States v. King*, 454 F.3d 187, 189 & n.1 (3d Cir. 2006).

## II.

The decision in *Booker* had a titanic effect on federal sentencing.  By excising those provisions of the Sentencing Reform Act that had previously required district courts to impose a sentence within the range recommended by the United States Sentencing Guidelines, the Supreme Court granted to district courts the discretion to issue the sentence that they believe best fits the particular circumstances of the case, in light of the broad objectives set forth in 18 U.S.C. § 3553(a).  *See Booker*, 543 U.S. at 258-64; *see also Cooper*, 437 F.3d at 329-32.

But, although adherence to the Guidelines range is no longer mandatory, application of them still is.  *Cooper*, 437 F.3d at 329-32.  The Sentencing Reform Act still requires that district courts, when imposing sentence, consider the "sentencing range . . . as set forth in the [G]uidelines."  18 U.S.C. § 3553(a)(4).  District courts are obliged by

---

[1]Defense counsel did not raise this objection during sentencing proceedings, an omission that would arguably justify plain-error review.  *See United States v. King*, 454 F.3d 187, 193 (3d Cir. 2006); *United States v. Dyer*, 325 F.3d 464, 470-71 (3d Cir. 2001).  However, we need not finally resolve the appropriate standard of review, as we would reach the same result even if the issue had been properly preserved.

this provision to apply the Guidelines as they did before *Booker*, determining the recommended range pursuant thereto. *Cooper*, 437 F.3d at 329-32.

One essential component of the Guidelines is the departure procedure. *See, e.g., King*, 454 F.3d at 194-97. The Guidelines recognize a number of grounds on which a district court may depart, upward or downward, from the otherwise applicable range. *See, e.g.*, U.S. Sentencing Guidelines Manual § 5K2.0. These provisions, no less than those relating to offense level and criminal history category, are indispensable to calculating the "sentencing range . . . as set forth in the [G]uidelines" for purposes of 18 U.S.C. § 3553(a). *See King*, 454 F.3d at 194-97. District courts are under the same obligation post-*Booker* as they were pre-*Booker* with respect to ruling upon requests for departures.[2] *See id.*

We can thus rely on pre-*Booker* caselaw to resolve the issue in this case: whether the District Court was required to state explicitly that it had considered and was denying the motion for downward departure. Most relevant to this inquiry is our opinion in *United States v. Georgiadis*, 933 F.2d 1219 (3d Cir. 1991). The question there, as in this case, was whether a district court must expressly consider and resolve a pending motion

---

[2]Of course, this does not mean that a violation of the standards governing departure motions will always result in reversal. *See King*, 454 F.3d at 194-97 (declining to presume that defendant was prejudiced by district court's failure to apply departure framework); *United States v. Schweitzer*, 454 F.3d 197, 205 (3d Cir. 2006) (concluding that any error in district court's disposition of departure motion "is properly deemed harmless").

7

for downward departure prior to imposing sentence. An explanation of the district court's rationale is important because we lack jurisdiction to review a refusal to depart if based on discretionary considerations, as opposed to legal interpretation. *See id.* at 1222 ("If we determine the district court was aware of its authority to depart from the Guidelines, and chose not to, we are without power to inquire further into the merits of its refusal to grant [the] request [for downward departure].").

We declined to impose such a requirement. *Id.* at 1222-23. An express ruling on a motion for downward departure is unnecessary, we held, if the record as a whole demonstrates that the district court considered the relevant discretionary factors and declined to alter the otherwise applicable sentencing range. *Id.* This showing, if made, would confirm that the district court understood its authority to depart but refused to do so as a matter of discretion, thereby precluding appellate review. *Id.*[3]

The record in this case satisfies this standard. Samuelsen's motion for downward departure was premised on two grounds: extraordinary post-offense rehabilitation and extraordinary acceptance of responsibility. Both of these could arguably serve as a basis

---

[3]*Cf. United States v. Mummert*, 34 F.3d 201, 205-06 (3d Cir. 1994) ("[W]here the record does not make clear whether the district court's denial of departure was based on legal or discretionary grounds, . . . the appropriate course of action is to vacate the sentence and remand for the district court to clarify the basis for its ruling.") (citing *Georgiadis*, 933 F.2d at 1222-23).

for departure,[4] and the District Court was obliged to consider them. *See King*, 454 F.3d at 194-97.

But, contrary to Samuelsen's claim, the record demonstrates that the District Court honored this obligation. It accepted psychological reports and testimony relating to Samuelsen's mental state, his feelings of remorse, and his efforts at restitution. It heard the arguments of counsel, which focused substantially on Samuelsen's rehabilitation and acceptance of responsibility. And, most importantly, the District Court expressly referred to this testimony and these arguments during the imposition of sentence and noted, in the judgment, that "the court finds no reason to depart." The District Court recognized the potential grounds for departure, and plainly understood its authority to alter the otherwise applicable range, but it simply declined to do so.[5] This decision was a discretionary one, which we cannot review. *See Georgiadis*, 933 F.2d at 1222.

---

[4]*See United States v. Sally*, 116 F.3d 76, 79 (3d Cir. 1997) ("[P]ost-offense rehabilitation efforts, including those which occur post-conviction, may constitute a sufficient factor warranting a downward departure provided that the efforts are so exceptional as to remove the particular case from the heartland in which the acceptance of responsibility guideline was intended to apply."); *United States v. Lieberman*, 971 F.2d 989, 996 (3d Cir. 1992) ("[A] sentencing court may depart downward when the circumstances of a case demonstrate a degree of acceptance of responsibility that is substantially in excess of that ordinarily present."). *But see United States v. Severino*, 454 F.3d 206, 210 n.2 (3d Cir. 2006) (questioning validity of *Lieberman* in light of recent amendments to the Guidelines).

[5]Perhaps tellingly, Samuelsen does not argue that the District Court failed to give full consideration to the factors under 18 U.S.C. § 3553(a), *cf. Severino*, 454 F.3d at 211 (holding that district courts may consider "extraordinary acceptance of responsibility" in weighing statutory factors), or that his final sentence is "unreasonable," *see Cooper*, 437 F.3d at 327-28 (holding that we have jurisdiction to entertain such claims).

9

That the District Court did not phrase its ruling in the parlance of "departure" is hardly surprising, given the unsettled nature of sentencing law in September 2005. The relevance of departures under the Guidelines was still an open question at that time, with at least one appellate court even suggesting that, after *Booker*, these motions need not be ruled upon. *See*, *e.g.*, *United States v. Johnson*, 427 F.3d 423, 426 (7th Cir. 2005) (stating that "[the concept of] 'departures' has been rendered obsolete by . . . *Booker*"). We have only recently rejected this position, and clarified that departures under the Guidelines remain an important cog in the sentencing mechanism, to be distinguished from "variances" from the recommended range based on the factors under 18 U.S.C. § 3553(a). *See United States v. Severino*, 454 F.3d 206, 210-11 (3d Cir. 2006); *King*, 454 F.3d at 194-97; *Cooper*, 437 F.3d at 332-33; *see also United States v. Vampire Nation*, 451 F.3d 189, 195 & n.2 (3d Cir. 2006) (adopting "variance" and "departure" terminology).

We cannot criticize the District Court for failing to draw this distinction when we had not yet done so. Indeed, it would be contrary to *Georgiadis* and many subsequent cases to require that the District Court use particular language in denying a motion to depart. *See, e.g.*, *King*, 454 F.3d at 194-97 (affirming sentence despite district court's failure to adhere to departure standards because district court "did in fact touch all the bases required"). The only obligation that we will impose, to allow us to assess our own jurisdiction over the claim, is to require that the record as a whole demonstrate that the district court considered the relevant discretionary factors and refused to alter the

10

applicable sentencing range. *See Georgiadis*, 933 F.2d at 1222-23. The record in this case does so, and we thus lack jurisdiction to consider the District Court's decision.

III.

District courts would be well advised to consider motions for departure independently from their assessment of the factors under 18 U.S.C. § 3553(a), and to state explicitly on the record the reasons for granting or denying the motion. But a failure to do so, while it may result in unnecessary appeals and waste of judicial resources, will not necessarily require remand. So long as the record reasonably demonstrates that the district court considered the discretionary factors relevant to departure – as does the record in this case – we may dismiss the appeal for lack of jurisdiction without remanding for further clarification.

For these reasons, the appeal will be dismissed.