**UNITED STATES of America**

v.

**James M. REDDING, Sr., Appellant.**

**No. 06–1698.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 22, 2007.

Filed: March 2, 2007.

Theodore B. Smith, III, Office of United States Attorney, Harrisburg, PA, for United States of America.

Frederick W. Ulrich, Office of Federal Public Defender, Harrisburg, PA, for Appellant.

Before: SCIRICA, Chief Judge, FUENTES and CHAGARES, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

In this sentencing appeal, James M. Redding challenges application of a two-level increase in his offense gravity score for more than minimal planning, U.S.S.G. § 2F1.1, and abuse of position of trust, U.S.S.G. § 3B1.3. We will affirm the judgment of conviction and sentence.

### I.

Redding was employed as a collection agent by Symphony Health Care Services. His job included collecting delinquent accounts and negotiating settlements with various businesses that owed Symphony money. Redding was not authorized to receive, divert or deposit any checks payable to Symphony. Nevertheless, Redding opened an account at PNC Bank, and deposited approximately 100 checks payable to Symphony. The checks totalled $780,823, but Redding remitted to Symphony only $366,912. Redding kept $413,911 for himself, using it primarily to support his and his wife's drug addiction. To execute this scheme, Redding caused PNC bank statements reflecting the fund deposits to be mailed from the PNC bank in McSherrytown, Pennsylvania, to P.O. box 215 in Hanover, Pennsylvania.

Redding pled guilty to mail fraud, 18 U.S.C. § 1341, under a plea agreement. At his sentencing hearing, Redding raised three objections to the Presentence Investigation Report, challenging the: (1) more than minimal planning enhancement; (2) abuse of trust enhancement; and (3) failure to award a three-level reduction for acceptance of responsibility. On appeal, Redding does not challenge the finding on acceptance of responsibility. The Court rejected Redding's objections and sentenced him to 50 months' imprisonment, restitution in the amount of $413,911, a three-year period of supervised release following his term of imprisonment, and a special assessment of $100.00.[1]

1. The Guideline Range is 46–57 months, based on a total offense level of twenty-one

Redding appealed. The sentence was vacated and remanded for resentencing in accordance with *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *See United States v. Davis*, 407 F.3d 162 (3d Cir.2005). On remand, the District Court imposed the same sentence as before.

This appeal followed. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

### II.

Under *Booker*,

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*. (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force. (3) Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir.2006) (internal quotations and citations omitted); *see also United States v. Cooper*, 437 F.3d 324, 330 (3d Cir.2006). We review sentences for reasonableness in light of the "relevant factors" that guide sentencing. *United States v. Charles*, 467 F.3d 828, 830 (3d Cir.2006). Appellants challenging the sentence have the burden of proving unreasonableness. At resentencing, the court adopted the "factual findings and the guideline application in the pre-sentence report." The court considered statutory sentencing factors under § 3553(a), including defendant's criminal history and the need to provide "sufficient" punishment and deterrence "to reflect the seriousness [2] of the offense and promote respect for the law."

### A. More than Minimal Planning

■ Redding argues the District Court erred in granting a two-level enhancement to his offense level under U.S.S.G. § 2F1.1 contending each instance of theft should have been considered "purely opportune." [3] He contends he could not have planned ahead for each act, asserting lack of knowledge and control over which accounts were to be assigned to him on a daily basis, and emphasizing the willingness of his employer to accept or refuse the amount he negotiated.

Section 2F1.1(b)(2) requires a two-level increase when the offense involved more than minimal planning. More than minimal planning "means more planning than is typical for commission of the offense in a simple form. . . . [It] also exists if significant affirmative steps were taken to conceal the offense. . . . [It] is deemed pres-

and a Criminal History Category of III. U.S.S.G. Chapter 5, Part A.

**2.** Redding's extensive large-scale fraud involved forty-six entities, causing losses over $413,911. Symphony may never be fully compensated. "[L]oss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level under this guideline." U.S. Sentencing Guidelines Manual § 2B1.1 cmt. background.

**3.** An act is "purely opportune . . . [if it is] spur of the moment conduct, intended to take advantage of a sudden opportunity." *United States v. Monaco*, 23 F.3d 793, 797–98 (3d Cir.1994) (quoting *United States v. Rust*, 976 F.2d 55, 57 (1st Cir.1992)); *see also United States v. Crawford*, 407 F.3d 1174, 1180 (11th Cir.2005); *United States v. McCoy*, 242 F.3d 399, 405 (D.C.Cir.2001); *United States v. Lutz*, 154 F.3d 581, 590 (6th Cir.1998).

ent in any case involving repeated acts[4] over a period of time, unless it is clear that each instance was purely opportune." *United States v. Cianscewski*, 894 F.2d 74, 81 (3d Cir.1990) (quoting U.S.S.G. § 1B1.1 comment. n.1(f)).[5] Whether a defendant engaged in more than minimal planning is a factual question reviewed for clear error. *Id.*

The District Court's determination that Redding's offense involved "more than minimal planning" is not clearly erroneous. The scheme to defraud Symphony extended over a period of time, from April 13, 2000, through January 23, 2002, and involved repeated acts. Redding negotiated and reached settlements with forty-six entities owing debts to Symphony. As a result of this scheme, he received about 100 checks payable to Symphony, but did not report and return the full amounts to the company. He deposited $780,823 worth of checks and misappropriated $413,911, mostly to support his and his wife's drug addiction.

The substantial time period covered and number of transactions demonstrate that Redding's conduct was not "purely opportune." As we previously held, there was more than minimal planning (rather than taking advantage of a sudden opportunity) where the defendant asked his son to prepare inaccurate labor sheets which defendant entered into contractor's computer system, and repeated the scheme a total of four times. *Monaco*, 23 F.3d at 797–98. *See also United States v. Georgiadis*, 933

F.2d 1219, 1221, 1227 (3d Cir.1991) (finding administrator of Bank's mortgage settlement closing engaged in "more than a minimal planning" when he diverted $284,104.89 in settlement funds into his own accounts many times over a period of time (from March 1985 until January 1989)); *Cianscewski*, 894 F.2d at 81 (finding defendant's receipt of seven stolen checks from government informant or from his wife, and his sale of them to undercover agents on three separate occasions over a three-week period, amounted to "more than minimal planning").

During this period, Redding had the opportunity to consider his actions, but he continued to wrongfully divert Symphony's money. *See United States v. Wong*, 3 F.3d 667, 671 (3d Cir.1993); *Georgiadis*, 933 F.2d at 1226 (more than minimal planning adjustment "considers the deliberative aspects of a defendant's conduct and criminal scheme"). Redding repeated the same criminal pattern until discovered, which demonstrates more than minimal planning. *See Wong*, 3 F.3d at 671; *Georgiadis*, 933 F.2d at 1226–27. Reiteration of the fraudulent activity indicates greater culpability. *United States v. Bush*, 126 F.3d 1298, 1300 n. 1 (11th Cir.1997).

**B. Abuse of Position of Trust**

■ Redding also contends the District Court erroneously applied a two-level enhancement to his offense level under U.S.S.G. § 3B1.3 for abuse of a position of private trust.[6] Whether a defendant is

---

**4.** "[S]atisfaction of the repeated acts criterion requires at least three acts over a period of time." *United States v. McCoy*, 242 F.3d at 405 (D.C.Cir.2001).

**5.** "[W]here as a part of a plea bargain the defendant has agreed to be sentenced under the Sentencing Guidelines, we follow our pre *United States v. Booker* practice of adhering to the Guidelines Manual's commentary 'unless it violates the Constitution or a federal stat-

ute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" *United States v. Newsome*, 439 F.3d 181, 184 (3d Cir.2006) (quoting *Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)) (citation omitted).

**6.** Section 3B1.3 provides in part: "if the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or

subject to U.S.S.G. § 3B1.3, a court must initially determine whether the defendant occupied a position of public or private trust. If so, the court must determine "whether the defendant abused this position of trust in a way that significantly facilitated his crime." *United States v. Iannone,* 184 F.3d 214, 222 (3d Cir.1999). We review *de novo* whether a defendant occupied a position of trust within the meaning of § 3B1.3, as this is a legal question. *Id.* We review a finding that a defendant abused a position of trust for clear error, as this is a factual question. *Id.*

We apply a three-pronged test: "(1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority which the position vests in defendant vis-a-vis the object of the wrongful act; (3) whether there has been reliance on the integrity of the person occupying the position." *United States v. Nathan,* 188 F.3d 190, 205 (3d Cir.1999) (quoting *United States v. Pardo,* 25 F.3d 1187, 1192 (3d Cir.1994)).

Here, Redding's offense was difficult to detect and was only discovered after almost two years. Redding contends he lacked professional or managerial discretion and was subject to a significant degree of supervision. He points out he was at the same level of five other debt collectors and was supervised by another Symphony employee. But Redding had considerable discretion. From April 13, 2000, until January 23, 2002, Redding had authority to initiate and conduct negotiations with Symphony's debtors and negotiate monetary settlements. As noted, "the primary trait that distinguishes a person in a position of trust from one who is not is the

concealment of the offense, increase by two levels." U.S.S.G. § 3B1.3. The rationale for increased punishment is that the insider who abuses his position is thought to be more

extent to which the position provides the freedom to commit a difficult-to-detect wrong." *United States v. Craddock,* 993 F.2d 338, 341 (3d Cir.1993). Notwithstanding some degree of supervision, there was reliance on his integrity. All three prongs of the *Pardo* test are met. Redding abused his position as he took wrongful advantage of his position with Symphony. *See United States v. Sokolow,* 91 F.3d 396, 413 (3d Cir.1996).

### III.

For these reasons, we will affirm the judgment of conviction and sentence.

culpable than one who simply commits the offense. *See United States v. Pardo,* 25 F.3d 1187, 1192 (3d Cir.1994); Application note 1 in the Commentary to § 3B1.3.